# In the United States Court of Federal Claims

No. 21-804

(Filed Under Seal: April 29, 2021)

(Reissued:  May 6, 2021)

| | |
|---|---|
| **APPSENTIAL, LLC**,<br><br>          Plaintiff,<br><br>     **v.**<br><br>**UNITED STATES**,<br><br>          Defendant,<br><br>     **and**<br><br>**GENERAL DYNAMICS INFORMATION TECHNOLOGY, INC.**<br>          Defendant-Intervenor. | Post-award bid protest; motion to supplement and complete the administrative record; technical evaluation; price evaluation; best-value determination |

Eric S. Crusius, Holland & Knight LLP, Tysons, Virginia for plaintiff, Appsential, LLC. With him on briefs were David S. Black, Gregory R. Hallmark, and Kelsey M. Hayes, Holland & Knight LLP, Tysons, Virginia.

Stephen C. Tosini, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. for defendant, United States.  With him on briefs were Brian M. Boynton, Acting Assistant Attorney General, Civil Division, Robert E. Kirschman, Jr., Director, and Douglas K. Mickle, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C, as well as Ada Mitrani, Trial Attorney, United States Department of Energy, Washington, D.C.

Noah B. Bleicher, Jenner & Block LLP, Washington, D.C. for defendant-intervenor, General Dynamics Information Technology, Inc.  With him on briefs were Previn Warren, Matthew L. Haws, and Carla J. Weiss, Jenner & Block LLP, Washington, D.C.

**OPINION & ORDER**[1]

LETTOW, Senior Judge.

Before the court in this bid protest are competing motions for judgment on the administrative record. Plaintiff Appsential, LLC ("Appsential") challenges the Department of Energy's ("DOE" or "agency") decision to award a contract for business information technology to General Dynamics Information Technology, Inc. ("GDIT"), in essence replacing Appsential, which has been the incumbent on an expiring contract for the same services. The court finds that the agency appropriately acted in accordance with its discretionary judgment, and therefore Appsential's motion for judgment on the administrative record is DENIED and the government's and GDIT's motions for judgment on the administrative record are GRANTED.

## BACKGROUND

### A. Solicitation

The DOE issued a request for quotations ("RFQ") for solicitation number 89303019QCF000008 on November 26, 2019. AR 9-119 to 120.[2] The agency sought to establish a single-award blanket purchase agreement ("BPA") to provide operations and maintenance support services to DOE's corporate business information technology infrastructure. AR 9-120. The solicitation set the base period of performance at 36 months with two, 24-month option periods. While the BPA "itself d[id] not obligate any funds[,] . . . [f]unds w[ould] be obligated by placement of individual Orders issued" pursuant to the agreement. AR 9-121. The agency anticipated that "five orders [would] be issued," AR 9-120, under the order categories Program Services (Order 1), Business Apps (Order 2), Data Management (Order 3), National Nuclear Security Administration (Order 4), and Program Management (Order 5), AR 9-158. The agency estimated that the amount of total purchases pursuant to the BPA would be approximately $282 million. AR 9-120.

To evaluate bids, the agency stated that it would "utilize the Best Value Trade-Off process." AR 9-159. The government was "more concerned with obtaining a superior technical quote than making an award at the lowest evaluated price," but would "not make an award at a price premium [that] it considers disproportionate to the benefits associated with the evaluated superiority of one technical quote over another." AR 9-159. The RFQ outlined four factors by which bids would be evaluated—corporate experience (factor 1), demonstrated understanding of the technical requirement (factor 2), management approach and key personnel (factor 3), and price (factor 4). AR 9-160. These factors were listed in descending order of importance with corporate experience being the most important factor and price the least important factor. AR 9-

_____

[1] Because of the protective order entered in this case, this opinion was initially filed under seal. The parties were requested to review this opinion and to submit proposed redactions of any confidential or trade secret material. The resulting redactions are shown by ellipses enclosed by brackets, *e.g.,* "[***]"

[2] Citations to the administrative record shall include the tab and page number, *i.e.* "AR Tab-Page Number."

160.  Factors 1, 2, and 3 would be rated using an adjectival rating scale of outstanding, good, acceptable, marginal, and unacceptable.  AR 9-160 to 161.  Further, for the first three factors, the agency could evaluate a proposal for significant strengths, strengths, weaknesses, significant weaknesses, and deficiencies.  AR 9-161.[3]  Price, however, would not receive an adjectival rating, but would instead "be evaluated for price fairness and reasonableness."  AR 9-162.[4]

### B.  Offers, Agency Evaluation, and Award to GDIT

Five bidders submitted offers to DOE, including Appsential and GDIT.  AR 31-1646.  Factors 1, 2, and 3 were evaluated by the agency's Technical Evaluation Committee.  *See* AR 31-1644, 1647.  Appsential was awarded a rating of outstanding for factor 1, outstanding for factor 2, and good for factor 3.  AR 31-1647.  The agency then ranked the offerors' overall technical qualifications.  AR 31-1647.  Appsential had the highest overall technical rating, while GDIT and another offeror were tied for the second highest rating.  AR 31-1647.  GDIT was awarded a rating of good for all three technical factors.  AR 31-1647.[5]  GDIT offered a price of $89,784,156.40, and Appsential offered a price of $[***].  AR 31-1656.  GDIT's price was the lowest price, approximately [***] percent lower than the next lowest price offer.  *See* AR 31-1656.  The Contracting Officer conducted a price reasonableness determination and found that both offeror's prices were fair and reasonable.  AR 30-1641.

The source selection officer determined that GDIT's offer, with its lower price, represented a better value to the government than the other offer that was rated the same technically.  Therefore, the agency conducted the best-value tradeoff analysis between GDIT's and Appsential's offers and presented the following chart to directly compare the offers:

---

[3] The RFQ provided detailed descriptions of what was meant by each of these terms and how the ratings would be assessed.  AR 9-160 to 162.

[4] The agency issued four amendments to the solicitation between December 20, 2019 and April 22, 2020.  *See* AR Tabs 10-13.  Following the third amendment, two offerors amended their offers.  *See* Def.'s Cross-Mot. & Resp. at 5, ECF No. 33.

[5] The three other offerors were [***], [***], and [***].  AR 31-1646.  Like GDIT, [***] received a rating of good for all three factors.  AR 31-1647.  [***] was rated good for factor 1 and acceptable for factors 2 and 3, AR 31-1647, while [***] was rated acceptable for all three factors, AR 31-1647.  As a result, the agency ranked the offerors' overall technical qualifications as follows: [***] was tied for second; [***] was fourth; and [***] was fifth.  AR 31-1647.

| Vendor | Factor 1: Corporate Experience | Factor 2: Demonstrated Understanding of Technical Requirements | Factor 3: Management Approach and Key Personnel | Factor 4: Price |
|---|---|---|---|---|
| Appsential | Outstanding | Outstanding | Good | $[***] |
| GDIT | Good | Good | Good | $89,784,156.40 |

AR 31-1656 to 1657. After thoroughly detailing each offer's strengths and weaknesses under the various factors and call orders, *see* AR 31-1657 to 1660, the source selection officer found that "the quote submitted by GDIT represent[ed] the best value to the Government." AR 31-1660. GDIT was notified that it was the apparent awardee on August 13, 2020, AR 33-1663 to 1664, and Appsential was notified of its unsuccessful bid on the following day, AR 34-1666.

### C.  GAO Protests and Corrective Action

Appsential filed a protest with the Government Accountability Office ("GAO") on August 24, 2020. *See* AR 40-1795. The agency subsequently filed notice of corrective action, AR 41-2518, and GAO dismissed the protest, AR 42-2519 to 2520. In its Corrective Action Memorandum, the Contracting Officer stated that the agency intended to reevaluate the technical evaluations for Appsential and GDIT before reissuing an award decision. AR 43-2521 to 2522. The Technical Evaluation Committee again awarded Appsential a rating of outstanding for factor 1, outstanding for factor 2, and good for factor 3, and GDIT ratings of good for all three factors. AR 44-2523 to 2524. Both Appsential and GDIT were assessed an additional strength under factor 3. AR 45-2576. The agency found that "[a]lthough Appsential [was] still higher technically rated overall, . . . Appsential's technical advantages in Factors 1 and 2 do not merit the approximately $[***] dollar price premium," and awarded the contract to GDIT. AR 45-2577. DOE notified Appsential of the award decision on October 5, 2020. AR 46-2578.

On October 15, 2020, Appsential filed a second GAO protest. AR 48-2589. The agency moved for partial dismissal of the protest, arguing that Appsential's "challenges fail[ed] to state sufficient legal and factual grounds for a protest" because "Appsential's argument . . . [was] entirely based on GDIT's price being lower than Appsential's." AR 49-3293. GAO denied DOE's request. AR 51-3315. Appsential filed two supplemental protest grounds, AR Tabs 59, 61, and the agency filed a report and memorandum of law, AR Tab 60. On January 22, 2021, GAO issued a decision denying Appsential's protest. AR 67-5491. Specifically, GAO stated that the agency's technical and price evaluations and best-value tradeoff determination were reasonable and consistent with the terms of the solicitation and applicable statutes and regulations. AR 67-5498 to 5506.

### D.  Present Action

Appsential filed the present action in this court on January 27, 2021. *See* Compl., ECF No. 1. After the court granted GDIT's motion to intervene, *see* Order of January 27, 2021, ECF No. 13, the court held a hearing on January 29, 2021. The court entered a protective order, *see* Order of January 20, 2021, ECF No. 14, and provided a schedule for proceedings based on a

proposed schedule agreed by the parties, *see* Order of January 29, 2021, ECF No. 15.  The government filed the administrative record on February 12, 2021, which was later supplemented twice.  *See* ECF Nos. 26-28, 30-31.[6]

Appsential filed its motion for judgment on the administrative record on February 26, 2021.  *See* Pl.'s Mot. for J. on the Admin. R. ("Pl.'s Mot."), ECF No. 29.  The government filed a response opposing Appsential's motion, and both defendants filed cross-motions for judgment on the administrative record.  *See* Def.'s Resp. & Cross-Mot. for J. on the Admin. R. ("Def.'s Cross-Mot."), Def.-Intervenor's Cross-Mot. for J. on the Admin. R. ("GDIT's Cross-Mot."), ECF No. 34.  These competing motions were fully briefed.  *See* Pl.'s Reply & Resp., ECF No. 35; Def.'s Reply, ECF No. 37; Def. Intervenor's Reply ("GDIT's Reply"), ECF No. 39.  The court held a hearing on April 13, 2021,[7] and the motions are now ready for disposition.

## STANDARDS FOR DECISION

The standards of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, govern the court's consideration of a protest of the government's decisions regarding the award of a contract.  *See* 28 U.S.C. § 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5.").  Under the APA, the court may set aside a government procurement decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), subject to the traditional balancing test applicable to a grant of equitable relief, *see PGBA, LLC v. United States*, 389 F.3d 1219, 1224-28 (Fed. Cir. 2004); *Hyperion*, *Inc. v. United States*, 115 Fed. Cl. 541, 550 (2014).

---

[6] On February 16, 2021, the government filed a motion to correct the administrative record, which the court subsequently granted.  *See* ECF Nos. 27-28.  Thereafter, the court granted the government's second motion to supplement the administrative record.  *See* ECF Nos. 30-31.  As a result, AR pages 1 to 72 can be found at ECF No. 27-1, AR pages 73 to 5506 can be found at ECF Nos. 26-2 to 26-8, and AR pages 5507 to 5508 can be found at ECF No. 30-1.

On March 26, 2021, Appsential filed a motion to supplement the administrative record, *see* ECF No. 36, that the government opposed on the grounds that the documents sought were protected from disclosure by the deliberative process privilege and attorney client privilege, *see* ECF No. 38.  Following argument on the motion, the court requested documents withheld pursuant to deliberative process privilege for *in camera* review but not those withheld on attorney client privilege, *see* Order of April 13, 2021, ECF No. 41, and the government submitted such documents on April 16, 2021.  After review, the court upheld the government's invocation of privilege and denied Appsential's motion.  *See* Order of April 20, 2021, ECF No. 42.

[7] The transcript of the hearing was filed on April 21, 2021.  *See* ECF No. 44.  The transcript will be cited as "Hr'g Tr. page number:line number."  The date will be omitted from the citation.

The court may not "substitute its judgment for that of the agency," *Hyperion*, 115 Fed. Cl. at 550 (quoting *Keeton Corrs., Inc. v. United States*, 59 Fed. Cl. 753, 755 (2004) (in turn quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated on other grounds as recognized in Califano v. Sanders*, 430 U.S. 99, 105 (1977))), but "must uphold an agency's decision against a challenge if the 'contracting agency provided a coherent and reasonable explanation of its exercise of discretion,'" *id.* (quoting *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009)).  "'[T]he deference afforded to an agency's decision must be even greater when a trial court is asked to review a technical evaluation' because of the highly specialized, detailed, and discretionary analyses frequently conducted by the government." *CSC Gov't Sols. LLC v. United States*, 129 Fed. Cl. 416, 434 (2016) (citing *L-3 Commc'ns EOTech, Inc. v. United States*, 83 Fed. Cl. 643, 650 (2008)) (additional citations omitted).

The court may overturn the government's procurement decision only "if '(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).  In conducting the rational-basis analysis, the court looks to "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion," *Axiom*, 564 F.3d at 1381 (quoting *Impresa Construzioni*, 238 F.3d at 1333), and affords "contracting officers . . . discretion upon a broad range of issues," *AgustaWestland N. Am., Inc. v. United States*, 880 F.3d 1326, 1332 (Fed. Cir. 2018) (quoting *Impresa Construzioni*, 238 F.3d at 1332-33); *see also Glocoms v. United States*, 150 Fed. Cl. 258, 269 (2020) (noting the agency's broad discretion to weigh factors in a best-value procurement).  Accordingly, "the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis." *Centech*, 554 F.3d at 1037 (quoting *Impresa Construzioni*, 238 F.3d at 1332-33).  Protests alleging a violation of regulation or procedure "must show a clear and prejudicial violation." *Axiom*, 564 F.3d at 1381 (quoting *Impresa Construzioni*, 238 F.3d at 1333).

## ANALYSIS

Appsential argues that the agency erred in its evaluation of GDIT's proposed staffing reductions and corporate experience, and that the agency failed to properly mitigate GDIT's organizational conflict of interest.  *See* Pl.'s Mot. at 18-37.  Each contention will be addressed.

### I.    *GDIT's Proposed Staffing Plans*

Plaintiff's principal argument relates to the agency's evaluation of GDIT's proposed staffing numbers.  *See* Pl.'s Mot. at 18-27.  The agency, plaintiff contends, used incorrect historical staffing and labor mix data that "resulted in its failure to comprehend the true extent to which GDIT had proposed to cut experienced staff."  *Id.* at 18.  According to Appsential, this misunderstanding of historical data tainted the agency's evaluation of GDIT's proposal under factors 2 and 3.  *Id.* at 18-20.  In support of its contentions, Appsential provided a breakdown of labor staffing numbers experienced historically and compared them to those under GDIT's

quote. *Id*. at 5.[8]  These numbers were used to suggest that GDIT's proposal cut staff more than the amount considered by the agency in its analysis. *Id*. at 7-11.  The government counters that "Appsential misconstrues the record and the balancing undertaken by DOE." Def.'s Cross-Mot. at 20.  Defendant and GDIT aver that the agency's approach was entirely reasonable. Hr'g Tr. 33:3-9; GDIT's Cross-Mot. at 38.  While Appsential may have staffed junior or intermediate billets with more experienced individuals, the agency was reasonable to only "treat[] senior people and senior billets as senior." Hr'g Tr. 33:4-5.[9]

The amended RFQ stated that offers should "provide sufficient detail in the quote to indicate a technical understanding of, and capability for performing all aspects of each [performance work statement]" as it related to factor 2.  AR 13-647.  Offerors were instructed to describe "the people, tools, processes, and methods to be used in performance of the tasks." AR 13-648.  Offers would be evaluated as to "[t]he soundness, practicality and feasibility of the proposed approach and work plans." AR 13-656.  For factor 3, the RFQ further requested information about "key personnel for the BPA and Orders." AR 13-648.  The agency would evaluate offers by their "ability to organize and manage all aspects" of the BPA and orders. AR 13-656.  While the agency provided historical staffing numbers, *see* AR 30-1642, the solicitation did not require the offerors to conform their offers to these numbers.[10]

The technical evaluation committee extensively evaluated factors 1, 2, and 3 of GDIT's proposal, but did not note concerns regarding GDIT's proposed staffing levels or labor mix. *See generally* AR 29-1614 to 1618.  Subsequently, in the price analysis report, the contracting officer evaluated the staffing and labor information for each of the offerors. *See* AR 30-1638 to 1640. The contracting officer stated that the "GDIT's labor mix and level of effort, while lean, is more in line with the historical approach" for orders 1, 2, 4, and 5.  AR 30-1640.  The agency, when considering order 3, acknowledged that "GDIT proposed fewer senior resources than [were] used in the current historical approach," but it stated that the "labor mix was . . . consistent with the unique technical approach provided by" GDIT, including cross-training of personnel.  AR 30-1640.[11]  According to the contracting officer, although GDIT's reduction in staff was "lean and

_____

[8] The chart provided by Appsential in its motion indicates that the historical contract included [***] total employees, [***] of which were senior employees.  Pl.'s Mot. at 5.  Plaintiff indicates that GDIT's quote provided for [***] employees, [***] of which were senior employees. *Id*.  These numbers are broken down for each of the five orders. *Id*.

[9] GDIT advances additional arguments regarding the reliability and utility of the historical data. *See* GDIT's Cross-Mot. at 28-31.  Because the court finds that, even assuming that Appsential's historical data are correct, the agency acted reasonably, the court will not address these arguments.

[10] The solicitation did provide position titles, minimum requirements, and responsibilities for various BPA positions. *See* AR 40-2080 to 2099.

[11] The TEC also referenced GDIT's unique technical approach, noting that GDIT's "utiliz[ation of] cross site teams . . . will cut down on silos and enable a rapid response to surge demand across all BPA orders" while "increas[ing] the staffing flexibility." AR 29-1618. The

create[d] some risk" to the agency, GDIT's labor mix was "acceptable" and would be able "to effectively support the scope of work identified in the" performance work statement.  AR 30-1640.

Appsential's arguments rest on the assumption that a different staffing approach than that it is using as the incumbent would not be capable of completing contract requirements and the agency was unreasonable for finding otherwise.  The agency's evaluation, particularly the agency's evaluation of a proposal's technical merit, is afforded great deference.  *CSC Gov't Sols.*, 129 Fed. Cl. at 434 (citations omitted).  The court cannot displace the agency's reasoned judgment, provided that that judgment is supported by the administrative record and complies with the solicitation requirements.  *See Centech Grp.*, 554 F.3d at 1037 (citations omitted).  The record indicates that the agency complied with the terms of the solicitation, rationally evaluated GDIT's staffing proposal and labor mix, and reasonably concluded that GDIT represented the best value to the government.

Notably, the contracting officer acknowledged that GDIT's staffing approach was "lean" as to all call orders under the BPA and would result in some risks to the government.  AR 30-1640.  Specifically, the agency stated that GDIT's offer provided for substantially fewer total labor hours than the other proposals.  AR 31-1655.  However, the agency believed that GDIT's unique approach, including the use of cross-training and cross-site teams, mitigated the risks.  AR 29-1618; AR 30-1640; AR 31-1650.  In the head-to-head best-value-tradeoff analysis between GDIT and Appsential, the agency specifically considered the differences, both numbers and percentages, between the staffing proposals.  AR 31-1658 to 1659.  Ultimately, however, the agency determined that "GDIT proposed a solid technical approach which [was] likely to exceed performance expectations" and that paying a $[***] premium was not the best value for the government.  AR 31-1659 to 1660.  This represents a reasoned opinion within the agency's discretion that the court will not unturn.  *See Centech Grp.*, 554 F.3d at 1037 (citations omitted).  Therefore, the agency's evaluation of GDIT's technical approach and staffing proposal was neither unreasonable nor grounds for a reversal of the award to GDIT.

## II.   *GDIT's Corporate Experience*

Appsential also challenges the agency's evaluation of GDIT's corporate experience under factor 1.  *See* Pl.'s Mot. at 27-32.  Specifically, Appsential argues that the agency should not have considered contracts conducted by CSRA LLC and SRA International, Inc.  *Id.* at 27-30.  While Appsential characterizes these companies as "affiliate[s]" of GDIT, *id* at 28, it argues that the agency did not determine that either company would be meaningfully involved in performing this contract, *id.* at 31.  Therefore, according to Appsential, the agency's decision to award GDIT strengths for CSRA LLC's and SRA's contracts was arbitrary, capricious, and lacked a rational basis.  *Id.* at 27-32.

In discussing the corporate experience factor, the solicitation stated that an offeror "may provide corporate experience information for its parent organization(s), member organizations in

---

TEC report further stated GDIT presented "a flexible and proactive approach to staffing that will reduce risk."  AR 29-1618.

a joint venture, limited liability company, or other similar or affiliated companies." AR 13-645. An affiliated company must be "provided or relied upon in contract performance such that [the company] will have meaningful involvement." AR 13-645. The solicitation defines meaningful involvement as the affiliate "provid[ing] material supplies, equipment, personnel, or other tangible assets to contract performance; or . . . the common parent [utilizing] the expertise, best practices, lessons learned, or similar resources from the affiliate to affect the performance of the Offeror." AR 13-645.

In GDIT's proposal, GDIT stated that "General Dynamics Corporation . . . acquired CSRA Inc. and its subsidiaries, including CSRA LLC and SRA International, Inc." in April 2018. AR 18-1144. The three companies "continue[d] to exist as separate legal entities, [but] they [were] legally affiliates by sharing common ownership by General Dynamics and . . . operate[d] as integrated companies with shared resources." AR 18-1144 (emphasis omitted). At the time that GDIT submitted its quotation, it further stated that the companies "share a fully integrated management team, together with common company policies and [ ] processes, facilities, equipment, and support staff," and that GDIT would use "lessons learned and best practices" from the prior contracts performed by CSRA LLC and SRA to improve performance if it was awarded the BPA. AR 18-1144.

The government and defendant-intervenor argue that the information provided by GDIT allowed the agency to reasonably determine that CSRA LLC and SRA would be meaningfully involved in the BPA. Def.'s Cross-Mot. at 34-36; GDIT's Cross-Mot. at 15-19. The court agrees. As GDIT explained in its offer, AR 18-1144, and again confirmed during the hearing on the cross-motions, Hr'g Tr. 42:23 to 43:3, CSRA LLC and SRA were wholly owned subsidiaries of GDIT's parent company that are integrated and managed by GDIT.[12] Given that GDIT detailed the overlap in personnel, facilities, and equipment between the companies, as well as GDIT's commitment to use the affiliates' expertise and similar resources, the agency reasonably concluded that GDIT established the meaningful involvement of CSRA LLC and SRA. Therefore, the agency did not act arbitrarily nor capriciously in awarding GDIT strengths for its affiliates' past performance.[13]

### III.   Organizational Conflict of Interest

Further, Appsential raises an organizational conflict of interest ("OCI") argument, arguing that "the Agency failed to identify and mitigate a potential OCI when it learned that one

---

[12] Subsequently, after the BPA issued, GDIT officially merged the SRA and CSRA entities into GDIT. See AR 63-5335; AR 66-5489.

[13] For the same reason, Appsential's argument that the agency improperly used the experience of SRA to offset Appsential's experience as the incumbent contractor also fails. See Pl.'s Mot. at 30-32. The agency could reasonably consider SRA's corporate experience when evaluating GDIT under factor 1. While Appsential may disagree with the assessment that "GDIT demonstrated similar experience [to Appsential's incumbent performance in] performing the requirements for other agencies," AR 31-1659; see Pl's Mot. at 30, that determination was reasonable and wholly within the discretion afforded to the agency.

of the stakeholders within the Agency is married to an individual on GDIT's team responsible for GDIT's proposal effort." Pl.'s Mot. at iv.  Specifically, Appsential alleges that, as a result of this relationship, "an unequal access to information OCI" occurred because GDIT had "access to competitively useful, nonpublic information." *Id.* at 32 (citations omitted).  Defendant suggests that Appsential's argument is nothing more than "a veiled accusation," Def.'s Cross-Mot. at 36, while GDIT states that "Appsential's allegation bottoms out in suspicion and innuendo that falls short of 'hard facts' indicating the actual or potential existence of a conflict," Def.-Intervenor's Mot. at 40 (citations omitted).

The parties agree on the basic facts as outlined in the administrative record and the parties' briefs.  [***], a division director in DOE's Office of the Chief Financial Officer, is married to [***], who is a Principal Solutions Architect at GDIT.  AR 22-1533 to 1534; Pl.'s Mot. at 14.  Early on, [***] was involved in drafting and reviewing documents related to this solicitation.  AR 22-1534.  [***], specifically, "provided input into one of the six order Performance Work Statements . . . and reviewed the Independent Government Cost Estimate" between March and May of 2018.  AR 22-1534.  In July of 2018, [***] became aware that GDIT had responded to the agency's request for information and recused herself from involvement with the solicitation.  AR 22-1534.  The agency took no additional mitigating actions at the time. AR 22-1534.  GDIT alerted the agency of the potential OCI on December 6, 2019.  AR 22-1533. The contracting officer subsequently contacted [***] "to further investigate the potential OCI and to document [***]'s involvement" with the solicitation.  AR 22-1534.  GDIT's proposal also noted that [***] had recused himself from any involvement with the company's offer and was "removed from all related meetings and discussions, firewall[ed] . . . from the proposal team, . . . [and] had no access to the SharePoint site that contains all of the GDIT proposal-related information."  AR 18-1157 to 1158.

The contracting officer conducted a review of the potential OCI on February 4, 2020. AR Tab 22.  The contracting officer interviewed [***], reviewed the documents that [***] had worked on, and discussed the situation with the prior contracting officer.  AR 22-1534.  While the contracting officer determined that there were "no substantial changes" in the documents between the time [***] worked on the documents and when the RFQ was publicly released in November 2019, AR 22-1534, the documents had gone "through multiple substantive reviews" following [***]'s recusal, "and contain[ed] similar requirements to prior IT contracts issued to meet DOE's needs," AR 22-1535.  Ultimately, the contracting officer determined that there was no "substantial risk to the integrity of the competition, or unfair competitive advantage, nor [was] there risk to the government that could outweigh a potential award to GDIT."  AR 22-1535.[14]

Federal Acquisition Regulation ("FAR") Subpart 9.5 governs organizational conflicts of interest in federal procurements.  *See* FAR Subpart 9.5.  Contracting officers are required to "[i]dentify and evaluate potential organizational conflicts of interest as early in the acquisition process as possible" and "[a]void, neutralize, or mitigate significant potential conflicts before contract award."  FAR 9.504(a).  There are three situations that give rise to an OCI: "biased

---

[14] The contracting officer further noted that if GDIT was awarded the BPA, "in accordance with FAR Subpart 9.503, . . . a written waiver [should] be executed and signed by an individual authorized to execute such a waiver."  AR 22-1535.

ground rules," "unequal access to information," and "impaired objectivity." *Arinc Eng'g Servs., LLC v. United States*, 77 Fed. Cl. 196, 202 (2007) (citations omitted). Appsential alleges unequal access to information, *i.e.* that GDIT had access to nonpublic, competitively useful information by way of its employee's marriage to a DOE employee. Pl.'s Mot. at 32-37. A protester seeking to have a contract award set aside for an OCI must identify "hard facts" establishing the existence of the OCI, *PAI Corp. v. United States*, 614 F.3d 1347, 1352 (Fed. Cir. 2010) (citations omitted), and "cannot rely on mere inference or suspicion of an actual or apparent conflict," *Alabama Aircraft Indus., Inc. v. United States*, 83 Fed. Cl. 666, 686 (2008) (quotation marks and citation omitted), *rev'd on other grounds*, 586 F.3d 1372 (Fed. Cir. 2009).

Appsential is correct that a marriage between an agency employee and an employee of an offeror could create the appearance of a conflict of interest, as noted by the contracting officer. AR 22-1535. The contracting officer determined, after review of the circumstances, that "no additional steps [needed] to be taken to mitigate this possible OCI." AR 22-1535. The court does not find that the contracting officer's decision was unreasonable. The administrative record indicates that the prior contracting officer did not believe additional actions were necessary beyond [***]'s recusal. *See* AR 22-1534. Additionally, the contracting officer thoroughly investigated the matter, determined that mitigation efforts already taken were sufficient, and recommended additional steps should GDIT be awarded the contract. AR 22-1533 to 1535. While Appsential suggests additional steps that the contracting officer could have taken,[15] the absence of these actions no not render the contracting officer's conclusion arbitrary and capricious.

The cases Appsential cites do not apply to this situation. For example, in *NetStar-1 Gov't Consulting, Inc. v. United States*, the identified OCI concerned the fact that employees of the offeror "had access to the agency's Shared Drive . . . [that] contained acquisition planning and procurement documents . . . during the bidding period for the contract in question." 101 Fed. Cl. 511, 516 n.5 (2011). Appsential suggests not that [***], or other GDIT employees, had access to the information in question, but rather that [***], who recused herself from involvement with the procurement, shared information with [***] who was recused and walled off from involvement at GDIT. Pl.'s Mot. at 33-35. Without more than this speculation, Appsential has failed to meet its burden of identifying the requisite facts in the administrative record that support its claim that GDIT had an unequal access to information OCI.

---

[15] Specifically, Appsential suggests that the contracting officer should have required GDIT to prepare "an OCI mitigation plan[,] . . . require[d] [***] to promptly delete" [***] files related to the solicitation, and "firewall[ed] [***] from accessing [solicitation] information." Pl.'s Mot. at 37.

## CONCLUSION

For the reasons stated, Appsential's motion for judgment on the administrative record is DENIED, and the government's and defendant-intervenor's cross-motions for judgment on the administrative record are GRANTED.

The Clerk shall enter final judgment in accord with this disposition.

No costs.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Senior Judge